IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AARON W. WILSON,                )
                                )
            Petitioner,         )
                                )
    v.                          )    Case No. 21-3277-JWL
                                )
KEVIN PAYNE, Commandant,        )
United States Disciplinary Barracks,[1] )
                                )
            Respondent.         )
                                )
_____)

**MEMORANDUM AND ORDER**

Petitioner, a military prisoner, filed a petition for habeas corpus under 28 U.S.C. § 2241, in which he claims that his court-martial lacked jurisdiction to convict and sentence him. For the reasons set forth below, the Court **denies** the petition.

**I.     Background**

Petitioner enlisted in the United States Army in 1992, although in 2012 he was permanently retired by the Army pursuant to 10 U.S.C. § 1201 with a 30 percent disability rating. In 2017, petitioner was convicted in a court-martial, consistent with his guilty pleas, of two crimes involving sexual misconduct with a child, and he ultimately received a

---

[1] The Court previously substituted the commandant of petitioner's place of confinement as the proper defendant in this habeas action. That previous respondent has since been replaced as commandant, and therefore the Court has substituted the present commandant as respondent.

sentence of confinement of 17 years. On appeal, petitioner challenged the military court's jurisdiction over him as a medical retiree, but the United States Army Court of Criminal Appeals (ACCA) summarily affirmed the convictions, and the United States Court of Appeals for the Armed Forces (CAAF) denied review of that decision.

In 2021, petitioner, acting *pro se*, filed his habeas petition in the United States District Court for the District of Columbia, and the case was subsequently transferred to this Court, for the reason that petitioner has been confined within this judicial district at the United States Disciplinary Barracks at Fort Leavenworth. The Court then granted petitioner's request for appointment of counsel, and the Federal Public Defender was appointed to represent petitioner in this action. Respondent filed an answer to the petition, petitioner (through appointed counsel) filed a traverse, and then each party was granted leave to file a supplemental brief to address the decision of the D.C. Circuit in *Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022), *cert. denied*, 144 S. Ct. 277 (2023). The Court stayed the action pending the outcome of a petition for certiorari in *Larrabee*, and after the Supreme Court denied that petition, each party was allowed to submit one additional brief. The case is now ripe for ruling.

### II.     Standard of Review

The Court first addresses the governing standard of review. Respondent argues that the military courts gave full and fair consideration to petitioner's jurisdictional claim in rejecting it, as shown by application of the Tenth Circuit's *Dodson* test, and that therefore

this Court may not consider of the merits of petitioner's claim. The Court rejects this argument.

The Tenth Circuit last year clarified and reaffirmed that a district court ordinarily may consider the merits of a habeas petition filed by a prisoner convicted by court martial only if "the military justice system has failed to give full and fair consideration to the petitioner's claims." *See Santucci v. Commandant*, 66 F.4th 844, 855 (10th Cir. 2023) (citing *Burns v. Wilson*, 346 U.S. 137, 142 (1953)), *cert. denied*, 144 S. Ct. 191 (2023)). A court determines whether such full and fair consideration has been given by examining the following four factors (referred to as the *Dodson* factors):

> 1. The asserted error must be of substantial constitutional dimension. 2. The issue must be one of law rather than of disputed fact already determined by the military tribunals. 3. Military consideration may warrant different treatment of constitutional claims. 4. The military courts must give adequate consideration to the issues involved and apply proper legal standards.

*See id.* at 856 (quoting *Dodson v. Zelez*, 917 F.2d 1250, 1252-53 (10th Cir. 1990)). Military petitioners must establish that all four factors weigh in their favor in order to have the merits of their claims reviewed. *See id.* Respondent argues that because petitioner cannot satisfy the *Dodson* test (particularly with respect to the fourth factor), the Court may not review petitioner's claim on the merits.

Petitioner's claim, however, challenges the military courts' jurisdiction over him, and this Court is not precluded from considering such a challenge. The Tenth Circuit directly addressed this issue in *Fricke v. Secretary of Navy*, 509 F.3d 1287 (10th Cir. 2007). In *Fricke*, the court began by acknowledging that after *Burns* – the Supreme Court case on which the *Santucci* court relied and on which respondent now relies – the Tenth Circuit

3

had held that the Supreme Court "had not changed preexisting law on the scope of [its] review of jurisdictional issues." *See id.* at 1289 (citing cases). After noting that other cases had possibly caused confusion on the issue, the Tenth Circuit put the matter to rest in *Fricke*, as follows:

> We now reiterate that our review of military convictions is limited generally to jurisdictional issues *and* to determination of whether the military gave full and fair consideration to each of the petitioner's constitutional claims, and we clarify that our review of jurisdictional issues is independent of the military courts' consideration of such issues.

*See id.* at 1290 (emphasis in original) (citation and internal quotation omitted). Respondent has not identified any opinion in which the Tenth Circuit overruled or called into question this holding of *Fricke*. To the contrary, in *Santucci* the Tenth Circuit expressly acknowledged that *Burns* provided an *additional* avenue for habeas review "beyond jurisdictional questions," *see Santucci*, 66 F.4th at 855 – meaning that jurisdictional issues may be reviewed in a military habeas case without regard to the *Dodson* factors that expand on *Burns*'s "full and fair consideration" standard. In addition, this Court, in applying *Santucci* and the *Dodson* test, has consistently noted that the test applies to questions "other than questions of jurisdiction." *See, e.g.*, *Morris v. Payne*, 2023 WL 5152507, at *1 (D. Kan. Aug. 10, 2023) (Lungstrum, J.).

This Court is bound to apply this controlling authority from the Tenth Circuit. It therefore rejects respondent's argument that it may not review the merits of petitioner's jurisdictional claim.[2]

### III. Constitutionality of Jurisdiction

Petitioner's sole claim in this habeas action is that the military courts lacked jurisdiction over him.[3] He asserts both a constitutional basis and a statutory basis for that claim. As his primary argument, petitioner claims that a service member who has been permanently retired because of a disability is no longer a member of the "land and naval Forces" of the United States and thus does not fall with the "Make Rules Clause" of the Constitution, *see* U.S. Const. art. I, § 8, cl. 14; and that Congress therefore exceeded its constitutional authority to make rules governing such forces when it subjected such retirees to the provisions of the Uniform Code of Military Justice (UCMJ), including the jurisdiction of the military courts, pursuant to 10 U.S.C. § 802(a)(4). In particular, petitioner relies on the decision by the District Court for the District of Columbia in *Larrabee v. Braithwaite*, 502 F. Supp. 3d 322 (D.D.C. 2020), *rev'd sub nom. Larrabee v.*

---

[2] Respondent has stubbornly refused even to address this controlling authority permitting habeas review of jurisdictional issues, as he has continued to make the same argument in this and related cases despite the petitioners' citation to that authority. The Court would encourage respondent not to continue to make the same argument, which borders on the frivolous in light of *Fricke* and *Santucci*, in future cases involving purely jurisdictional issues.

[3] Any other claim arguably asserted in petitioner's *pro se* petition that appointed counsel did not argue in the traverse and supplemental briefs is considered to have been abandoned.

*Del Toro*, 45 F.4th 81 (D.C. Cir. 2022), *cert. den.*, 144 S. Ct. 277 (2023); and the opinion by the dissenting judge of the D.C. Circuit upon review of that district court decision, *see Larrabee*, 45 F.4th at 101 (Tatel, J., concurring in part and dissenting in part).

*Larrabee* involved a post-conviction collateral challenge to the assertion of court-martial jurisdiction over a former member of the Marine Corps who, upon retirement, became a member of the Fleet Marine Corps Reserve. The district court thus considered whether "Congress *can* constitutionally subject such military retirees [i.e., those included within the scope of the statutory jurisdiction under 10 U.S.C. § 802(a)(4)] to court-martial jurisdiction." *See Larrabee*, 502 F. Supp. 3d at 328 (emphasis in original). The district court noted that "[i]n evaluating the proper scope of court-martial jurisdiction, the Supreme Court has instructed that the relevant test is 'one of status, namely, whether the accused in the court-martial proceeding is a person who can be regarded as falling with the term "land and naval Forces."'" *See id.* (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 240-41 (1960)). The district court concluded that, to answer that question, "the Supreme Court has looked to whether 'certain overriding demands of discipline' necessitate court-martial jurisdiction over a certain class of individuals." *See id.* (quoting *Solorio v. United States*, 483 U.S. 435, 440 (1987)). The court then concluded that neither the receipt of retainer pay nor the fact that retirees may be subject to recall to active duty "suffices to demonstrate why military retirees *plainly* fall with the "land and naval Forces" or "why subjecting them to court-martial jurisdiction is *necessary* to maintain good order and discipline." *See id.* at 329 (emphasis in original). With respect to the first factor, the court noted that the Supreme Court had held that, for tax purposes, military retirement

6

benefits represent deferred pay for past services, rather than pay for current services. *See id.* at 330 (citing *Barker v. Kansas*, 503 U.S. 594, 605 (1992)). With respect to the second factor, the court stated again that Congress's constitutional power "to extend court-martial jurisdiction must be limited to that necessary for good order and discipline," and it concluded that that standard could not be met because of the unlikelihood of recall of retirees. *See id.* at 332. The district court therefore ruled in favor of the reservist's claim that the military courts lacked jurisdiction over him. *See id.* at 333.

The D.C. Circuit Court of Appeals reversed that decision of the district court. *See Larrabee*, 45 F.4th 81. The court of appeals began its opinion by noting that, under the relevant test from the Supreme Court, "[w]hether a person may be subjected to court-martial jurisdiction turns 'on one factor: the military status of the accused.'" *See id.* at 83 (quoting *Solorio v. United States*, 483 U.S. 435, 439 (1987). The court then stated its holding under that test as follows: "Based on the Supreme Court precedents interpreting the Make Rules Clause as well as the original meaning of that Clause, we hold that a person has 'military status' if he has a formal relationship with the military that includes a duty to obey military orders." *See id.*

The D.C. Circuit began its analysis by rejecting the argument that it must defer to Congress in determining whether a class of persons is properly subject to court-martial jurisdiction under the Make Rules Clause. *See id.* at 87-89. The court then noted that the Supreme Court had not directly addressed whether military retirees may be court-martialed. *See id.* at 89. The court further noted, however, that in decisions interpreting the Make Rules Clause, the Supreme Court had drawn "a consistent distinction between

7

civilians on the one hand and persons in the armed forces on the other." *See id.* The court proceeded to review the relevant cases from the Supreme Court, concluding that "[w]hat unites the decisions in these different contexts is that the persons found to be properly within 'the land and naval Forces' had a formal relationship with the military that included an obligation to obey military orders." *See id.* at 89-91. The court then reviewed American and British history and concluded that such a rule suggested by the Supreme Court's caselaw is consistent with the original meaning of the Make Rules Clause, as inactive-duty soldiers who maintained a relationship with the military and were subject to recall were considered part of the land and naval forces at that time. *See id.* at 91-95. Thus, the court held that a formal relationship with the armed forces that includes a duty to obey military orders is sufficient to make a person a member of the "land and naval Forces" for purposes of military jurisdiction under the Make Rules Clause. *See id.* at 95.

The court in *Larrabee* then determined that Marine reservists do meet that test, as such persons maintain a formal legal relationship with the Marines and are subject to orders, including an order to return to active duty. *See id.* 95-96. The court noted that its decision was consistent with "the settled position of the CAAF, which has long recognized military retirees as amenable to court-martial." *See id.* at 96 (citing, *inter alia*, *United States v. Begani*, 81 M.J. 273, 276, 279 (Ct. App. Armed Forces), *cert. denied*, 142 S. Ct. 711 (2021)). The court further noted that a similar result had been reached by the only other circuit court of appeals to have considered whether military retirees may be court-martialed. *See id.* (citing *United States ex rel. Pasela v. Fenno*, 167 F.2d 593, 595 (2d Cir. 1948)). The court also noted that, although it has not directly addressed this question, the

Supreme Court has nonetheless in other contexts recognized military retirees as part of the nation's armed forces. *See id.* at 96-97.

Finally, the D.C. Circuit rejected various arguments by the accused in that case. *See id.* at 97-100. First, the court rejected a call for a flexible, multi-factored, case-by-case approach, as the Supreme Court had rejected such an approach in holding that the permissible scope of court-martial jurisdiction turns on the single factor of the military status of the accused. *See id.* at 97-98. Second, the court rejected the district court's requirement that jurisdiction be necessary to maintain good order and discipline. *See id.* at 98. The court noted that in the case on which the district court had relied, the Supreme Court had not imposed such a limit on jurisdiction over persons with military status who were actually within the land and naval forces; rather, the Supreme Court's passing remark that countries had "tried to restrict military tribunals to the narrowest jurisdiction deemed absolutely necessary to maintaining discipline" had come in the context of that Court's sharp distinction between civilians and service members. *See id.* (citing *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 22 (1955)). Third, the D.C. Circuit rejected the complaint that a single duty to return to active status upon recall should not be sufficient to create jurisdiction. *See id.* at 98-99. The court could not see how the number of duties made a person more or less a part of the land and naval forces (while it also noted that Marine fleet reservists were in fact subject to a number of continuing duties). *See id.* Fourth, the court rejected that suggestion that every person registered for a compulsory draft would be subject to court-martial under the court's rule; the court pointed out that the Supreme Court has recognized that a person does not have a formal relationship with the military until

9

actually drafted. *See id.* at 99. Fifth, the court rejected policy arguments that were more properly directed to Congress. *See id.* at 99-100.

One member of the D.C. Circuit panel issued an opinion in which he concurred in part and dissented in part. *See id.* at 101-04 (Tatel, J., concurring in part and dissenting in part). Judge Tatel agreed with the majority that the court need not defer to Congress's statutory determination of its jurisdiction; and he agreed with the majority that the constitutional issue turns on the military status of the accused and that "the unifying pattern in Supreme Court precedent" is that the persons found to have been within the "land and naval Forces" had a formal relationship with the military that included an obligation to obey military orders. *See id.* at 101. Judge Tatel disagreed, however, that a single recall duty should be sufficient to satisfy that test. *See id.* Judge Tatel argued that a recall order is a different kind of order, one that provides a gateway to the necessary military status. *See id.* at 101-04. As noted above, the Supreme Court denied the petition for certiorari in *Larrabee*. *See* 144 S. Ct. 277 (2023).

In the instant case, petitioner notes that the D.C. Circuit's holding in *Larrabee* is not binding on this Court, and he argues that that case was wrongly decided and thus should not be followed here. For the reasons that follow, however, the Court concludes that the Tenth Circuit would agree with the D.C. Circuit's analysis of this issue of who falls within the "land and naval Forces" of the United States for purposes of the Make Rule Clause of the Constitution, and the Court therefore adopts and applies that analysis in this case.

As the court recognized in *Larrabee*, the Supreme Court has made clear that the proper exercise of court-martial jurisdiction under the Make Rules Clause depends on the

single factor of "the military status of the accused." *See Solorio*, 483 U.S. at 439 (citing cases). The D.C. Circuit undertook a thorough analysis of the relevant Supreme Court cases, and this Court agrees with that analysis. As noted in *Larrabee*, the Supreme Court has consistently distinguished between civilians and members of the armed forces, and the Supreme Court has found that a person's formal relationship with the military – even if not an active-duty relationship – removes that person from civilian status. Thus in *Ex parte Reed*, 100 U.S. 13 (1879), in finding a proper exercise of military jurisdiction, the Supreme Court noted that the paymaster's clerk had agreed to serve on a military vessel, thereby binding himself to a formal relationship with the military by appointment until discharged. *See id.* at 21-22. In *Kahn v. Anderson*, 255 U.S. 1 (1921), the accused were already in custody for past offenses, and thus the Supreme Court rejected the argument that they had ceased to be soldiers. *See id.* at 7. In *Billings v. Truesdell*, 321 U.S. 542 (1944), the Supreme Court confirmed Congress's power to subject to military jurisdiction those who disobey draft orders. *See id.* at 556.

Conversely, in the cases in which the Supreme Court found no military jurisdiction, a similar formal relationship to the military was lacking. Thus in *Toth* the accused had been discharged and had returned to civilian life; the accused "had no relationship of any kind with the military" and therefore was not "actually [a] member[] of the armed forces." *See Toth*, 350 U.S. at 13, 15, 22. In the same way, although service members' dependents may live on military installations and receive military benefits, they are not members of the military and have not lost their civilian status. *See Reid v. Covert*, 354 U.S. 1, 23, 32 (1957). In *McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281 (1960), the Supreme

11

Court held that military contractors are not subject to military jurisdiction unless, like the paymaster's clerk in *Reed*, they voluntarily bind themselves to the military and thus bring themselves into military status. *See id.* at 284, 286, 287.

Thus, this Court agrees with the panel of the D.C. Circuit – which was unanimous on this point – that the Supreme Court precedent indicates that the necessary military status is evidenced by a formal relationship with the military that includes an obligation to obey orders. That sound analysis leads to the conclusion that military jurisdiction over retirees in constitutional. As shown by the D.C. Circuit in its recounting of the relevant history, that conclusion is consistent with the original meaning of the Make Rules Clause. *See Larrabee*, 45 F.4th at 91-95. Also as noted in *Larrabee*, it is consistent with (1) the conclusion reached by the highest military court, most recently in *Begani*; (2) a decision of the Second Circuit (the only other circuit court to have addressed the issue);[4] and (3) the Supreme Court's references to retirees as members of the military. *See id.* at 95-97.

Petitioner's arguments for why this Court should reject the D.C. Circuit's test are not persuasive. Petitioner argues that the issue does not turn merely on whether the acused has any military status, but instead turns on the *type* of military status that the accused has. The Court rejects that argument, which seems only an exercise in semantics. As confirmed by the Supreme Court, the question turns on the military status of the accused, in the sense that the accused must actually be in the military, as opposed to in civilian status, and thus

---

[4] The D.C. Circuit's opinion in *Larrabee* was followed and applied by the court in *Bork v. Infante*, 2024 WL 194763 (D.S.C. Jan. 17, 2024), *appeal filed* (4th Cir. Mar. 8, 2024), which rejected the argument that it should instead follow the district court's opinion in *Larrabee*. *See id.* at *8.

12

actually in the "land and naval Forces" of the United States. As discussed above, the applicable Supreme Court precedent indicates that a person is in the armed forces if he or she has a formal relationship with the armed forces that includes an obligation to obey orders. That is the test that this Court applies.

Petitioner argues that the Supreme Court rejected a formal relationship test in *Covert*. In that case, however, as discussed above, there was no military jurisdiction because the accused were civilians, and thus they had no formal relationship with the military. In the present case, there is no question that petitioner had a formal relationship with the military.

Petitioner next argues that a single obligation to obey a recall order should not be sufficient to confer jurisdiction. The Court rejects this argument, just as the *Larrabee* majority did. As that court noted, the number of duties does not make a person any more or less a member of the armed forces. *See Larrabee*, 45 F.4th at 98-99. The *Larrabee* majority also rejected the dissent's argument that a recall order is fundamentally different from other orders; the majority noted that the dissent had not explained how the Make Rules Clause turns on the type of order, or how a recall obligation does not make a person a member of the "land and naval Forces." *See id.* at 98 n.14. Indeed, the concept of only a single obligation is illusory, as a recall obviously subjects the retiree to all other orders and obligations. A retiree is not like a civilian before being drafted, who is not yet in the military; in the case of the retiree, a relationship with the military already exists. Petitioner was part of the military on active duty, he remains in the military as a retiree, and he remains subject to any orders upon recall.

13

Petitioner also raises the concern that Congress could effectively expand the lawful military jurisdiction by simply creating military obligations for people, and he argues that the *Larrabee* majority held that Congress cannot determine the bounds of constitutional jurisdiction on its own in that way. The *Larrabee* court merely held, however, that it need not defer to Congress and conclude that because Congress subjected certain persons to statutory jurisdiction, that act is constitutional under the Make Rules Clause. *See Larrabee*, 45 F.4th at 87-89. The court did not state that Congress could not, for instance, pass laws by which people could be drafted into the military and thus become members of the land and naval forces subject to military jurisdiction, or by which service members could be discharged and thus become civilians no longer subject to military jurisdiction.

Petitioner also argues that the unifying theme of the Supreme Court cases is the need for court-martial jurisdiction in order to maintain good discipline and order in the military; and thus, as the district court in *Larrabee* ruled, that jurisdiction may be exercised only when necessary to achieve that goal. That district court relied primarily on language in *Toth*, in which the Supreme Court stated as follows:

> Free countries of the world have tried to restrict military tribunals to the narrowest jurisdiction deemed absolutely essential to maintaining discipline among troops in active service. . . .
>
> Determining the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to the least possible power adequate to the end proposed.

*See Toth*, 350 U.S. at 22-23 (internal quotations and footnote omitted). The Court rejects this argument. As the *Larrabee* majority noted, the Supreme Court made this statement in *Toth* in the context of distinguishing between civilians and members of the armed forces,

14

and the Supreme Court reached its decision in that case because the accused was a civilian. *See id.* at 21-23. Neither in *Toth* nor in any other case has the Supreme Court held that jurisdiction extends only as far as is necessary to maintain good order and discipline. Rather, as shown by the analysis is *Larrabee*, the only factor is whether the accused is properly considered a member of the armed forces instead of a civilian. The Supreme Court confirmed that sole determining factor in *Solorio*, and the degree to which discipline may be affected does not bear on whether a person is actually a member of the military. Moreover, in *Solorio* the Supreme Court cast doubt on any such reliance on this language from *Toth*, as it explained that this "dictum" from *Toth* may be interpreted as limited to the context addressed in *Toth* of the court-martial of an ex-serviceman. *See Solorio*, 483 U.S. at 440 n.3. In *Solorio*, the Supreme Court made clear that the only factor is the military status of the accused – not the degree to which discipline would be affected by the assertion of military jurisdiction.

Finally, petitioner argues that *Larrabee* should be limited to its own facts, involving a Marine fleet reservist. The *Larrabee* court, however, analyzed the case before it as one involving military retirees generally, *see, e.g.*, *Larrabee*, 45 F.4th at 89, 86-97, and petitioner has not cited any reason why a different analysis should apply to different types of retirees, including medical retirees. *See Ballard v. Kendall*, 640 F. Supp. 3d 41, 56-57 (D.D.C. 2022) (*Larrabee* holding applied to all retirees). Petitioner argues that his recall is unlikely, but he does not dispute that he is subject to recall and thus has an obligation to obey military orders. *See id.* at 57-58 (disability retirees are subject to recall). Petitioner

15

did not seek voluntary discharge to civilian life, and thus he maintained his formal relationship with the military.

Petitioner, as medical retiree, maintains a formal relationship with the military that includes an obligation to obey orders.[5]  He is therefore an actual member of the military, not a civilian, and he is therefore a member of the "land and naval Forces" of the United States.  Accordingly, the Court denies petitioner's claim that the exercise of court-martial jurisdiction over him was unconstitutional.

## IV.    Statutory Jurisdiction

Separate from his constitutional claim, petitioner claims that the military courts lacked jurisdiction over him because he does not fall within the scope of those courts' statutory jurisdiction.  The military courts asserted jurisdiction over petitioner pursuant to 10 U.S.C. § 802(a)(4), which provides that those subject to the Uniform Code of Military Justice (UCMJ) include "[r]etired members of a regular component of the armed forces who are entitled to pay."  *See id.*  Specifically, petitioner argues that he is not a retiree

---

[5] Respondent notes – and petitioner does not dispute – that Army regulations allowed petitioner to request voluntary separation from the Army.  *See* Army Reg. 635-200, para. 4-4 (Dec. 17, 2009).  Thus, petitioner chose to maintain his military status as a medical retiree instead of seeking to separate himself from the military entirely and return to civilian life.  *See Larrabee*, 45 F.4th at 84 (noting that after completing his or her years of service, a Marine may request to be discharged, resulting in a complete severance from all military status); *Begani*, 81 M.J. at 278 (noting that once a member of the Navy has completed his or her term of service, the member may elect to transfer to the Fleet Reserve or may simply leave the service and become a civilian).

"entitled to pay" because he receives disability benefits from the Department of Veterans Affairs (VA) instead of retired pay from the Department of Defense (DoD).

Petitioner is correct in noting that a VA disability benefit is distinct from retired pay. A service member with a disability may be retired "with retired pay," *see* 10 U.S.C. § 1201(a), and a disabled service member is also entitled to receive compensation under the statutes relating to veteran's benefits, *see* 38 U.S.C. § 1131. As the Tenth Circuit has explained, however, a disability retiree may not receive the same compensation from both sources:

> [E]ven if a veteran qualifies for both retired pay from the Department of the Army and disability benefits from the V.A., the veteran cannot receive the full amount of each because 38 U.S.C. § 5304 prohibits duplication of benefits. In such a case, the veteran may elect to waive the portion of retired pay that would be duplicative of disability benefits and, thereby, become entitled to receive disability benefits in addition to the unwaived portion of retired pay.

*See Burkins v. United States*, 112 F.3d 444, 447 (10th Cir. 1997); *see also* 38 U.S.C. §§ 5304, 5305. As the Supreme Court has noted, "since retirement pay is taxable while disability benefits are not, the veteran often elects to waive retirement pay in order to receive disability benefits." *See Howell v. Howell*, 581 U.S. 214, 216-17 (2017). In this case, petitioner asserts that because his disability benefits completely offset the amount of his retired pay, he has waived his right to retired pay completely, with the result that he receives only disability benefits.

The Court does not agree, however, that that waiver takes petitioner outside the scope of the military courts' statutory jurisdiction over retired members under 10 U.S.C. §

17

802(a)(4).[6] According to the plain language of the statute, a retiree is subject to military jurisdiction if he or she is "entitled to pay," *see id.*, with "pay" defined in the UCMJ to include retired pay, *see id.* § 101(a)(15). The statute does not provide for jurisdiction only if the retiree *receives* pay. Thus, statutory jurisdiction over a retiree turns on whether the retiree is *entitled to receive* retired pay. Petitioner could choose to take retired pay instead of disability benefits; accordingly, he is entitled to pay within the meaning of the jurisdictional statute.

That is the very conclusion reached by the military appellate courts that have addressed the issue. In *United States v. Stevenson*, 65 M.J. 639 (Navy-Mar. Ct. Crim. App. 2006), *set aside on other grounds*, 66 M.J. 15 (Ct. App. Armed Forces 2008), the court rejected the same argument by a disability retiree who received only disability benefits and no retired pay. *See id.* at 642-44. The court concluded that a plain reading of the statute made the entitlement to pay – instead of the receipt of pay – the condition precedent to jurisdiction under Section 802(a)(4), and that a disability retiree was still "entitled to pay" because he or she always had the option to renounce the disability compensation and return to receiving retired pay. *See id.* at 643. The court further concluded that Congress, in enacting the statute, would not have intended (under the retiree's interpretation) that a retiree could avoid court-martial jurisdiction by simply waiving retired pay in favor of

---

[6] Petitioner first raised this issue in his *pro se* petition, and his appointed counsel argued this statutory claim in multiple briefs. Nonetheless, respondent failed to address the issue other than to state that the type of pay received by petitioner did not matter because jurisdiction over him was constitutional. Respondent seems to have failed to appreciate, however, that petitioner was asserting a separate claim of a lack of *statutory* jurisdiction.

18

disability benefits while retaining the ability to return to retired pay in the future. *See id.*; *see also United States v. Reynolds*, 2017 WL 1506062, at *5 n.16 (Navy-Mar. Ct. Crim. App. Apr. 27, 2017) (following *Stevenson* in reaching the same conclusion); *United States v. Bowie*, 34 C.M.R. 808, 811 (A.F. Bd. Rev.) (election to receive VA benefits was not significant to issue of jurisdiction because retiree was still "entitled" to receive retired pay), *aff'd*, 34 C.M.R. 411 (Ct. Mil. App. 1964).

Petitioner has not cited any contrary authority. Nor has petitioner explained why he is not "entitled" to retired pay and thus within the statutory jurisdiction of the military courts. The Court thus concludes that petitioner falls within the statutory jurisdiction of the military courts.[7] Accordingly, the Court denies the habeas petition in its entirety.[8]

---

[7] Petitioner also argues in a supplemental brief that he is not subject to recall to active duty under a particular DoD instruction because he is not "entitled to pay" in light of his receipt of disability benefits only. As discussed, however, petitioner is "entitled" to receive retired pay, and thus petitioner's attempt to distinguish *Larrabee* in this manner fails.

[8] Petitioner seeks a certificate of appealability (COA) to allow him to appeal any denial of his petition to the Tenth Circuit, but the Court denies this request, for which there is no legal basis. Under 28 U.S.C. § 2253(a), the district court's final order in a habeas proceeding is subject to review on appeal. *See id.* That statute imposes a requirement of obtaining a COA for any appeal from the final order in either a state habeas proceeding under Section 2241 or a Section 2255 proceeding; but it does not extend that requirement to the final order in any other type of proceeding. *See id.* § 2253(c)(1). Thus, no COA is required for an appeal in the present case. *See Knighten v. Commandant*, 142 F. App'x 348, 349-50 (10th Cir. 2005) (military prisoner did not need a COA to appeal the denial of his Section 2241 habeas petition) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997)); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009) (COA was not required where order from which appeal was taken did not fall within the scope of 28 U.S.C. § 2253(c)(1)).

IT IS THEREFFORE ORDERED BY THE COURT THAT the petition for habeas corpus relief under 28 U.S.C. § 2241 is hereby **denied**.

IT IS SO ORDERED.

Dated this 26th day of April, 2024, in Kansas City, Kansas.

<u>/s/  John W. Lungstrum</u>
Hon. John W. Lungstrum
United States District Judge